UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
CHRISTINA M. GOODWIN,

                          Plaintiff,

          -against-

COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.
-------------------------------------------------------------------X

For Online Publication Only

**ORDER**
20-CV-02775 (JMA)

FILED
CLERK
12:48 pm, Sep 30, 2022
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**APPEARANCES**

    Daniel A. Osborn, Esq
    43 West 43rd St, Suite 131
    New York, New York 10036
    *Attorney for Plaintiff*

    Scott C. Akerman, Esq.
    Social Security Administration
    601 East 12th St., Room 965
    Kansas City, Mo 641106
    *Attorney for Defendant*

**AZRACK, United States District Judge:**

Plaintiff Christina M. Goodwin ("Plaintiff" or "Goodwin") seeks review of the final administrative decision by the Commissioner of Social Security (the "Commissioner"), reached after a hearing before an administrative law judge ("ALJ"), denying her application for disability benefits under Title II of the Social Security Act (the "Act"). Before the Court are the parties' cross-motions for judgment on the pleadings. (ECF Nos. 18, 20.) Because the Court finds that the ALJ failed to comply with the treating physician rule, Plaintiff's motion for judgment on the pleadings is GRANTED and the Commissioner's cross-motion is DENIED.

## I. BACKGROUND

### A. Procedural History

Plaintiff filed her application for Title II Supplemental Security Income ("SSI") benefits on July 8, 2016, alleging a disability onset date of September 11, 2015 due to multiple sclerosis, fatigue, balance impairment and cognitive impairment. (Tr. 22, 24-25, 194; see also ECF No. 1, Complaint ("Compl.")).[1]

Following the denial of her application on October 17, 2016 (Tr. 22), Plaintiff requested a hearing and was represented by counsel at an administrative hearing on April 9, 2019 before administrative law judge Andrew S. Weiss ("ALJ Weiss"). (Tr. 92-126.) The ALJ issued an unfavorable decision on May 3, 2019, finding Plaintiff not disabled during the period between September 11, 2015, her alleged onset date, and December 31, 2018, the date she had to establish disability to be entitled to benefits under Title II of the Act. (Tr. 22-33.)

### B. Factual Background

Plaintiff was born in 1981 and was thirty-four (34) years old at the time of the onset of her alleged disability. (Tr. 158.) She has completed some college and previously worked as a receptionist. (Tr. 95-96.)

### C. Relevant Medical Evidence

Plaintiff was treated by Dr. Saud Sadiq ("Dr. Sadiq"), a multiple sclerosis (or "MS") specialist, from April 30, 2012 through June 2019. (Tr.[1] 11, 481.)

On August 20, 2016, Dr. Sadiq submitted a medical source statement. (Tr. 399-402.) The statement explained that he first began treating Plaintiff in April 2012. (Tr. 399.) Dr. Sadiq listed Plaintiff's diagnosis as multiple sclerosis and identified her symptoms as bladder problems,

---

[1] "Tr." refers to the correspondingly numbered page in the certified administrative record.

2

chronic fatigue, and decreased cognitive abilities. (Tr. 399.) The statement noted that Plaintiff's cranial nerves were normal, her deep tendon reflexes were normal, her strength was normal, and her grip strength, rapid alternating movements, and fine manipulation were normal. (Tr. 400.) There were no abnormal movements. (Tr. 400.) Dr. Sadiq also opined that Plaintiff would have no limitation in terms of lifting or carrying, would have no limitation pushing or pulling, could stand and walk up to six hours a day, and would have no sitting limitation. (Tr. 401.)

At a December 19, 2016 visit, Plaintiff reported to Dr. Sadiq that she had two more falls. (Tr. 449.) She also reported blurry vision but denied eye pain. (Tr. 449.) She also reported tingling in her extremities. (Tr. 449.) Plaintiff described fatigue but said that Adderall "sometimes" helped for fatigue. (Tr. 449.)

At an August 24, 2017 visit, Plaintiff reported to Dr. Sadiq that she had gastrointestinal issues and esophagitis. (Tr. 451.) The record indicates that Plaintiff's medications were "on hold" because she expected to get pregnant. (Tr. 451.) An MRI of Plaintiff's thoracic spine taken on December 18, 2016 revealed "no cord demyelination." (Tr. 466.) A December 9, 2016 MRI of her cervical spine revealed a "single C3 level demyelinating cord plaque." (Tr. 464.)

On February 25, 2019, Dr. Sadiq completed another medical source statement regarding Plaintiff's physical limitations. (Tr. 481.) He again reported that he first treated Plaintiff in April 2012 and had continued to treat her through July 2018. (Tr. 481.) Dr. Sadiq listed Plaintiff's symptoms as reduced strength, numbness/tingling, migraines, unstable walking, bladder problems, fatigue, and decreased attention/concentration. (Tr. 481.)

Regarding her physical limitations, Dr. Sadiq opined that Plaintiff could sit for 6 hours and stand/walk for 3-4 hours, but in addition to regular scheduled breaks, she would require rest and/or unscheduled breaks during the workday. (Tr. 482.) Dr. Sadiq further opined that Plaintiff could

3

tolerate moderate stress but that stress exacerbates her symptoms, and that Plaintiff would be unable to meet strict deadlines, complete detailed or complicated tasks, tolerate heights or moving machinery and handle fast paced tasks. (Tr. 483.) Dr. Sadiq stated that due to Plaintiff's condition he could not predict how often she would need to be absent from work. (Tr. 483.)

On March 4, 2019, Dr. Sadiq advised that:

> [Plaintiff] has been a patient under my care for the treatment of multiple sclerosis (MS) since April 2012. One of [Plaintiff]'s most disabling symptoms due to this disease is pathological fatigue.
> MS fatigue is unable to be measured, but as an MS specialist who has treated thousands of MS patients, I can attest that fatigue due to MS is debilitating and unable to be treated effectively in many cases. Fatigue is one of the most common symptoms of MS, occurring in a large percentage of the patient population. It can significantly interfere with a person's ability to function at home and work, and is one of the primary causes of early departure from the workforce. Fatigue may be the most prominent symptom in a person who otherwise has minimal activity limitations.

(Tr. 484.)

At the April 9, 2019 hearing, Plaintiff testified that she was first diagnosed with MS in January 2009. (Tr. 97-98.) Due to MS, she has lesions on her cervical spine and throughout her brain. (Tr. 101-102.) Plaintiff testified that she has balance problems and severe fatigue, which requires frequent rest breaks, and that she experiences difficulty concentrating and remembering. (Tr. 101-102.) Her doctor prescribed Ampyr, a muscle strengthener, which has provided a slight improvement in her gait. (Tr. 105.) Plaintiff was prescribed other medications, Ocrevus and Rituxan, but discontinued them after they caused her to have upper respiratory infections and other side effects. (Tr. 108.)

On June 27, 2019, Dr. Sadiq submitted an additional letter, opining on Plaintiff's condition and limitations:

> "Christina requires frequent breaks to rest throughout the day due to her MS fatigue. In the event she is unable to rest during the day, it

> is necessary for her to use the entire day following to recover. Her fatigue has impacted her ability to function efficiently on a daily basis, and prevents her from adhering to a normal or restricted work schedule."

(Tr. 11.)

## II. DISCUSSION

### A. Social Security Disability Standard

Under the Act, "disability" is defined as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is disabled when his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

The Commissioner's regulations set out a five-step sequential analysis by which an administrative law judge (or "ALJ") determines disability. See 20 C.F.R. §§ 404.1520, 416.920. The analysis is summarized as follows:

> [I]f the Commissioner determines (1) that the claimant is not working, (2) that he has a "severe impairment," (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do.

Burgess v. Astrue, 537 F.3d 117, 120 (2d Cir. 2008) (quoting Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003)). At step four, the Commissioner determines the claimant's RFC

5

before deciding if the claimant can continue in his prior type of work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The claimant bears the burden at the first four steps; but at step five, the Commissioner must demonstrate that "there is work in the national economy that the claimant can do." Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009).

**B. Scope of Review**

In reviewing a denial of disability benefits by the Social Security Administration ("SSA"), it is not the function of the Court to review the record de novo, but to determine whether the ALJ's conclusions "are supported by substantial evidence in the record as a whole, or are based on an erroneous legal standard." Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998) (quoting Beauvior v. Chater, 104 F.3d 1432, 1433 (2d Cir. 1997)). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "To determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." Snell v. Apfel, 177 F.3d 128, 132 (2d Cir. 1999) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1984) (per curiam)). Thus, the Court will not look at the record in "isolation but rather will view it in light of other evidence that detracts from it." State of New York ex rel. Bodnar v. Sec. of Health and Human Servs., 903 F.2d 122, 126 (2d Cir. 1990). An ALJ's decision is sufficient if it is supported by "adequate findings . . . having rational probative force." Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002).

Conversely, a remand for further proceedings is warranted in cases where the Commissioner has failed to provide a full and fair hearing, to make sufficient findings, or to have correctly applied the law and regulations. See Rosa v. Callahan, 168 F.3d 72, 82–83 (2d Cir.

1999); see also 42 U.S.C. § 405(g) ("The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.").

## C. The Decision

In a decision dated May 3, 2019 (the "Decision"), ALJ Weiss found that Plaintiff was not disabled under the Act. (Tr. 12-32.) ALJ Weiss followed the five-step process pursuant to 20 C.F.R. § 404.1520 and denied Plaintiff's application for benefits. Specifically, ALJ Weiss found that Plaintiff had met the insured status requirements of the Act, had not engaged in substantial gainful activity since the alleged onset date, and had the severe medically determinable impairments of multiple sclerosis with fatigue and obesity. (Tr. 24.) At step-three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 26.)

ALJ Weiss then determined Plaintiff retained the RFC as follows:

> the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except lift 10 pounds occasionally, 5 pounds frequently, sit for a total of 6 hours during an eight-hour workday, stand/walk for a total of 2 hours during an eight-hour workday, alternate sitting and standing every hour for about 5 minutes, frequently operate foot and hand controls, reach in all directions, and handle and finger; occasionally climb stairs, no climbing ladders, ropes and scaffolds, balance frequently, and stoop kneel, crouch, and crawl occasionally, no exposure to unprotected heights and occasional exposure to moving machinery parts, and frequently understand, remember, and carry out instructions.

(Tr. 26.)

Based on this RFC and the hearing testimony from a vocational expert, ALJ Weiss determined that Plaintiff could perform work as a receptionist, a job classified at the sedentary exertional level. (Tr. 31-32.) Accordingly, ALJ Weiss concluded that Plaintiff was not under a

7

disability as defined by the Act during the relevant time period. (Tr. 32.) The Appeals Council denied Plaintiff's request for review on May 18, 2020, at which point ALJ Weiss' decision became the final decision of the Commissioner. (Tr. 1–3.) This appeal followed. (See ECF No. 1.)

**D. Analysis**

Plaintiff moves for judgment on the pleadings, contending that the ALJ (1) failed to give controlling weight to the medical opinions of Plaintiff's treating physicians, namely, Dr. Sadiq and Dr. Masood, and (2) failed to provide good reasons for not affording their opinions controlling weight. (ECF No. 18-1, "Pl's Mot." at 15.) The Court agrees.

Under the "treating physician rule," when a treating physician's opinion regarding the nature and severity of an individual's impairments is supported by "medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ will credit that opinion with "controlling weight." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); see also Estrella v. Berryhill, 925 F.3d at 90, 96 (2d Cir. 2019).[2] The ALJ must give "deference to the views of the physician who has engaged in the primary treatment of the claimant" when examining the severity of the alleged impairment. Burgess, 537 F.3d at 128 (quotation marks omitted); see also 20 C.F.R. § 404.927(c)(2) (stating that the ALJ must give controlling weight to the treating physician's opinion regarding the nature and severity of the impairments).

An ALJ may, however, discount a treating physician's opinion when the opinion is conclusory, the physician fails to provide objective medical evidence to support his or her opinion, the opinion is inconsistent with the record, or the evidence otherwise supports a contrary finding.

---

[2] The parties do not dispute that the "the treating physician rule" applies here because Plaintiff's claim was filed on July 8, 2016, and the current regulations only "apply to cases filed on or after March 27, 2017." Burkard v. Comm'r of Soc. Sec., No. 17-CV-00290, 2018 WL 3630120, at *2 (W.D.N.Y. July 31, 2018); see also 20 C.F.R. § 404.1520(c).

8

See 20 C.F.R. §§ 404.1527(c), 416.927(c). An ALJ must provide "good reasons" not to grant controlling weight to a treating physician's opinion. See Estrella, 925 F.3d at 95-96. "[I]f the ALJ decides the opinion is not entitled to controlling weight, [he] must determine how much weight, if any, to give it." Id. "In doing so, [the ALJ] must explicitly consider the following, nonexclusive Burgess factors: "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." Id. at 95-96 (quotation marks omitted). "Moreover, the failure to explicitly apply [these] factors when assigning weight at step two is a procedural error" and without "good reasons," a court is "unable conclude that the error was harmless and [will] consequently remand for the ALJ to comprehensively set forth its reasons." Ferraro v. Saul, 806 F. App'x 13, 14 (2d Cir. 2020) (citing Estrella, 925 F.3d at 95-96).

The Court finds that the ALJ failed to appropriately follow the treating physician rule with regard to Dr. Sadiq's medical opinions. Despite Dr. Sadiq's record of treatment of Plaintiff from April 2012 through June 2019, the ALJ's Decision only afforded Dr. Sadiq's opinions "some weight … as of the dates rendered and to the extent that they are supported by his treatment records and the medical evidence overall." (Tr. 30.) The Court agrees with Plaintiff that the Decision lacks sufficient detail as to whether Dr. Sadiq's opinions were supported by medically acceptable clinical and laboratory diagnostic techniques or were inconsistent with other substantial evidence in the record, and the ALJ's decision does not include discussion of the relevant regulatory factors identified in 20 C.F.R. § 404.1527(e). (See id.; Pl's Mot. at 17-18.)

The Commissioner implicitly concedes as much (or, at least, does not dispute) that the ALJ failed to discuss the factors identified in 20 C.F.R. § 404.1527(e). Instead, the Commissioner argues that the ALJ discussed the substance of the factors and counters that some of Dr. Sadiq's

9

medical opinions were outside of the relevant time period and thus appropriately excluded. (See ECF 20-1, "Def's Mot." at 23, 26.)

The Court finds this rationale unpersuasive because, as a general matter, the timing of a medical opinion, by itself, does not disqualify a claimant from being considered for purposes of a disability determination. See, e.g., David F. v. Comm'r of Soc. Sec., No. 20-CV-6479, 2021 WL 2985152, at *4 (W.D.N.Y. July 15, 2021); Moscatiello v. Apfel, 129 F. Supp. 2d 481, 489 (S.D.N.Y. 2001) ("[E]vidence of plaintiff's condition at a later time was relevant to the extent that it shed light on plaintiff's condition as of the date she was last insured."); Dailey v. Barnhart, 277 F. Supp. 2d 226, 233 n.14 (W.D.N.Y. 2003) ("Medical opinions given after the date that [the claimant's] insured status expired are taken into consideration if such opinions are relevant to her condition prior to that date."). It is undisputed that Dr. Sadiq's medical opinions after the relevant time period directly opined on conditions relevant to Plaintiff's alleged disabilities. For example, in his medical statement dated March 4, 2019, Dr. Sadiq reported that due to her MS, Plaintiff's "most disabling symptom" was "pathological fatigue." (Tr. 484.)

Moreover, the Decision's explanation for affording "some weight" to Dr. Sadiq's opinion does not provide a clear enough basis for the Court to consider whether the ALJ properly applied the treating physician rule and what, if any, "good reasons," there were for not assigning controlling weight. The Second Circuit has "consistently held that the failure to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand." Sanders v. Comm'r of Soc. Sec., 506 Fed. App'x 74, 77 (2d Cir. 2012) (citing Halloran v. Barnhart, 362 F.3d 28, 33 (2d. Cir. 2012) and Schaal, 134 F.3d at 505). See also Alexander v. Comm'r of Soc. Sec., No. 14-CV-00039, 2014 WL 7392112, *6 (D. Vt. 2014) (remand is necessary where "[t]he court cannot be confident that [plaintiff] received the treating physician rule's procedural

advantages, nor can it conclude that the substance of the treating physician rule was not traversed") (internal quotations and brackets omitted); Santiago v. Comm'r of Soc. Sec., No. 13-CV-1464, 2014 WL 4793448, *13 (E.D.N.Y. 2014) ("the [c]ourt is not confident that the ALJ properly adhered to the treating physician rule, and this error constitutes an independent ground for remand").

The Commissioner's opposition is silent as to what "good reasons" were stated for assigning only "some weight" to Dr. Sadiq's opinion, and the Court finds none.  Accordingly, ALJ Weiss' failure to appropriately evaluate and weigh treating physician Dr. Sadiq's opinion requires remand.  The Commissioner's argument that regardless of whether the "ALJ articulat[ed] [] reasons for the amount of weight assigned to Dr. Sadiq's opinions," the Decision reflects the "substance of the [treating physician] rule" is unavailing for the same reasons set forth herein. See Carolyn W. v. Comm'r of Soc. Sec. Admin., No. 20-CV-00423, 2022 WL 4244214, at *4 (S.D. Ohio Sept. 15, 2022) ("An ALJ's failure to comply with the treating physician rule will rarely be excused.") (citing Wilson v. Comm'r of Soc. Sec., 378 F.3d 541 (6th Cir. 2004)).

Having concluded that remand is warranted, the Court declines to reach Plaintiff's remaining contentions.³  See, e.g., Drozdowski v. Colvin, No. 15-CV-292 2016 WL 5402698, at *8 (W.D.N.Y. Sept. 28, 2016) (declining to reach plaintiff's remaining contentions where remand was warranted based on the ALJ's failure to comply with the treating physician rule); Erb v. Colvin, No. 14-CV-6258, 2015 WL 5440699, at *15 (W.D.N.Y. Sept. 15, 2015) (same).

---

³ Having considered the parties' positions with respect to Dr. Masood's medical opinions, the Court is not persuaded that it would change the outcome of the instant motion.  Because the Court finds that remand is clearly warranted based on the ALJ's evaluation of Dr. Saqid's medical opinions, the Court limits its analysis to that issue.

### III.  CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's motion for judgment on the pleadings; DENIES the Commissioner's cross-motion; and REMANDS the case for further proceedings consistent with this Order.  The Clerk of the Court is directed to enter judgment accordingly and close this case.

**SO ORDERED.**

Dated: September 30, 2022
Central Islip, New York

                                                            /s/ (JMA)
                                               JOAN M. AZRACK
                                             UNITED STATES DISTRICT JUDGE